UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Paul William Pilger,<br><br>  Plaintiff<br><br>v.<br><br>Monica Potter, et al.,<br><br>  Defendant | Case No.: 2:20-cv-01600-JAD-EJY<br><br>**Order Dismissing Claims and Closing Case**<br><br>[ECF Nos. 5, 6, 8, 12, 31, 32] |

Pro se plaintiff Paul Pilger contends in this removed action that Robert and Gwynneth Weiss hired him in 2001 to administer oil and gas leases that were held by their family trust.[1] Pilger alleges that he worked for the trust for 16 years, and that over time his role evolved from administering the leases to being a "factotum, handyman, counselor, associate, and close personal friend" of the Weisses.[2] Pilger contends that he turned down other work based on promises that the Weisses and their daughter, Sabrina Coryell, made to him about his future employment and housing.[3] According to Pilger, the Weisses asked Pilger to administer the trust's mineral rights for Pilger's life.[4] Pilger also contends that Gwynneth agreed in writing to gift him one of the condominium homes in the Las Vegas Country Club that the Weisses owned through their trust.[5] He further alleges that Coryell agreed with her mother's gift and offered to renovate the condo and pay the association fees for Pilger's lifetime.[6]

---

[1] ECF No. 1-1 at ¶ 13 (complaint).
[2] *Id.*
[3] *Id.* at ¶ 14.
[4] *Id.* at ¶ 15, 17–18.
[5] *Id.* at ¶ 21.
[6] *Id.* at ¶ 22.

But, Pilger alleges, his promises of lifetime employment and free housing for life were broken when, after both Robert and Gwynneth died, Monica Potter and Kevin Dwight turned Coryell against him and caused her to "renege" on her promises.[7] Potter is an executive with San Pasqual Fiduciary Trust Company,[8] which is a co-trustee of the administrative trust that arose upon Gwynneth's death.[9] Dwight is an attorney with the law firm of Manatt, Phelps & Phillips, LLC,[10] which represents the administrative trust's current trustees—Coryell and San Pasqual.[11] Pilger alleges that to get anything from Coryell or any of the trusts, he was required to sign agreements that Dwight drafted, which did not include terms for Pilger's lifetime employment or free housing for life.[12] So Pilger sues Coryell, Potter, Dwight, San Pasqual, and the Manatt law firm for tortious interference with contract, intentional interference with prospective economic advantage, extortion, unjust enrichment, misrepresentation, and breach of contract or promissory estoppel.[13]

The defendants move under Federal Civil Procedure Rules 9(b) and 12(b)(6) to dismiss Pilger's claims.[14] They also move under 28 U.S.C. § 1404(a) to dismiss this action or, alternatively, to transfer it to the United States District Court for the Central District of California.[15] Defendants additionally move for a decision on their pending motions or for a

---

[7] *Id.* at ¶¶ 23–25.
[8] *Id.* at ¶¶ 2–3.
[9] ECF No. 10 at ¶ 3 (declaration of Kevin Dwight).
[10] ECF No. 1-1 at ¶¶ 5–6.
[11] ECF No. 10 at ¶ 3.
[12] ECF No. 1-1 at ¶ 27.
[13] *Id.* at ¶¶ 26–37.
[14] ECF No. 5.
[15] ECF No. 8.

status conference.[16] And they ask me to take judicial notice of the two agreements that they contend form the basis of Pilger's claims.[17]

Pilger moves for remand, arguing that the notice of removal is untimely and the parties are not diverse.[18] Pilger also filed two unauthorized sur-replies,[19] which defendants seek leave to address with a sur-reply of their own.[20] In both of his sur-replies, Pilger "declare[s] to the [c]ourt that [he] does not object to [defendants'] motion for removal."[21] But in the sur-reply aimed at addressing defendants' petition for removal, Pilger both attacks the points and authorities that defendants provide in response to his motion to remand, and he states that arguments "regarding removal are moot" because he isn't forum shopping.[22]

Because Pilger's position on the issue of removal is not entirely clear,[23] I consider his motion to remand on its merits, and I deny it because the petition for removal is timely and the parties are diverse. Because the forum-selection clause here points to a nonfederal forum, I construe defendants' motion under 28 U.S.C. § 1404(a) to dismiss or transfer to another venue as

---

[16] ECF No. 32.

[17] ECF No. 6.

[18] ECF No. 12 (response to notice of removal). I construe Pilger's response to defendants' petition for removal as a motion to remand. Defendants filed a "reply" that addresses Pilger's remand arguments and supports their removal arguments. ECF No. 20. Pilger filed an unauthorized sur-reply in support of his removal arguments. ECF No. 30. And defendants filed (with a request for leave to file) a sur-reply in support of their removal arguments. ECF No. 31. In determining whether remand was warranted, I considered the relevant arguments that the parties made in these briefs, so I grant in part defendants' request for leave to file a sur-reply.

[19] ECF Nos. 29, 30.

[20] ECF No. 31.

[21] ECF No. 30 at 8; *accord* ECF No. 29 at 3.

[22] ECF No. 30 at 4–6.

[23] *Compare* ECF No. 30 at 7 ("Plaintiff stands by his argument against removal based on the United States Code."), *with id.* at 8 ("Plaintiff does not object to [defendants'] motion for removal.").

a motion to dismiss under the doctrine of *forum non conveniens*, and I grant that relief because Pilger's claims fall within the clause's ambit. So I dismiss Pilger's claims without prejudice to his ability to assert them in a new action in the parties' agreed venue—the Superior Court of California, Los Angeles County. And I deny or overrule as moot the parties' remaining motions, objections, and requests for relief.

## Discussion

### I. Pilger's motion to remand [ECF No. 12]

#### A. *Legal standard for removal based on diversity jurisdiction*

28 U.S.C. § 1332 provides that federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ."[24] 28 U.S.C. § 1441 authorizes defendants to remove to federal court "any civil action brought in a State court of which the [U.S. District Courts] have original jurisdiction . . . ."[25] But "[f]ederal courts are courts of limited jurisdiction."[26] So removing defendants "always have the burden of establishing that removal is proper."[27] This is a heavy burden to carry because there is a "strong presumption against removal jurisdiction[,]" the removal statute is "strictly construe[d] against removal jurisdiction[,]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[28]

---

[24] 28 U.S.C. § 1332(a)(1).
[25] *Id.* at § 1441(a).
[26] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[27] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).
[28] *Id.*

4

28 U.S.C. § 1446 sets forth the procedure for the removal of civil actions to federal court. The statute provides that defendants must file in the relevant district court a notice "containing a short and plain statement of the grounds for removal" along with copies of "all process, pleadings, and orders" that defendants have been served with in the action.[29] When removability is plain from the face of the complaint, the deadline to file the notice of removal is "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief" that the civil action or proceeding is based on.[30]

### B. Analysis

Pilger argues that I should remand this action back to state court for two reasons: (1) defendants did not timely file their notice of removal, and (2) subject-matter jurisdiction is lacking because the parties are not diverse.[31] I begin with the question of diversity jurisdiction. Despite the fact that Pilger is a citizen of Nevada and defendants are all citizens of other states,[32] Pilger argues that the parties are not diverse because Potter, Dwight, and Coryell should each be considered a representative of decedent Gwynneth's estate.[33] He points out that under 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."[34]

---

[29] 28 U.S.C. § 1446(a).

[30] *Id.* at § 1446(b).

[31] ECF No. 12.

[32] Coryell, Potter, Dwight, and San Pasqual are all citizens of California. ECF No. 1 at ¶¶ 4–5, 7. The Manatt law firm, which is a limited-liability partnership, is a citizen of several states but not Nevada. *Id.* at ¶ 6.

[33] ECF No. 12 at 8.

[34] *Id.* at 4.

But Pilger makes no showing that any of these defendants has been appointed as the legal representative of Gwynneth's estate, or that any such estate exists.[35] Pilger does not sue Gwynneth's estate or any defendant in their alleged capacity as a legal representative of that estate. Instead, he sues Potter individually and in her capacity as the Senior Vice President and Chief Operative Officer of San Pasqual.[36] He sues Coryell in her individual capacity.[37] And he sues Dwight individually and as an employee of the Manatt law firm.[38] Defendants have thus carried their burden to show that the parties in this removed action are diverse.

Pilger next argues that removal is untimely because he mailed each defendant a copy of the complaint in April 2020 but defendants did not file their petition for removal until four months later.[39] Pilger argues that when he mailed copies of the complaint to the defendants, he was hoping to avoid litigation and did not immediately obtain summonses or serve the defendants with process, and he gave them "time to review the complaint and reconsider their disregard of [his] request to settle."[40] Pilger argues that when he did not receive a response, he mailed a request for waiver of service of process to each defendant on June 30, 2020.[41] Pilger acknowledges that the defendants, through their counsel, signed and returned the waivers on July

---

[35] Defendants explain that Pilger is erroneously relying on the "probate exception" to diversity jurisdiction, and they insist that there is and was no estate because any of Gwynneth's assets that were not already held in trust during her life became trust property at the time of her death in 2017 by virtue of her pour-over will. ECF No. 20 at 6–10.

[36] ECF No. 1-1 at ¶ 2.

[37] *Id.* at ¶ 8.

[38] *Id.* at ¶¶ 5–6.

[39] ECF No. 12 at 6–9.

[40] *Id.* at 8.

[41] *Id.*

30, 2020.[42] Pilger argues that under 28 U.S.C. § 1446(b), the removal clock began to run either when he mailed copies of the complaint to the defendants in April 2020 or, at the latest, when he mailed requests to them on June 30, 2020, to waive service of summons.[43]

Justice Ruth Bader Ginsburg explained in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.* that § 1446(b) must be interpreted "in light of [the] bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."[44] Guided by this principle, the United States Supreme Court held in *Murphy Brothers* "that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, not by mere receipt of the complaint unattended by any formal service."[45] The Court reasoned that these are fair triggers for the removal clock because, "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party [that] the complaint names as a defendant."[46] "[O]ne becomes a party officially, and is required to take action in that capacity," the Court continued, "only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."[47] So "[u]nless a named defendant agrees to waive service, the summons continues to

---

[42] *Id.*

[43] *Id.*

[44] *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

[45] *Id.* at 347–48.

[46] *Id.* at 350.

[47] *Id.*

7

function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural and substantive rights."[48]

Here it is undisputed that defendants, through their counsel, each agreed to waive service of summons on July 30, 2020.[49] It was that agreement to waive service of process—not Pilger's mailing the requests for that accommodation—that started the removal clock ticking. Defendants thus had until August 31, 2020, to file their notice of removal.[50] They did so days before that deadline expired, so it is timely under § 1446(b).[51] I therefore deny Pilger's motion to remand this case back to state court.

## II. Defendants' motion to dismiss or transfer venue [ECF No. 8]

### A. *Legal standard to transfer venue in a forum-selection-clause action*

Defendants move under 28 U.S.C. § 1404(a) to dismiss this action or to transfer it to another venue on the grounds that Pilger signed an agreement that contains a mandatory forum-selection clause.[52] Pilger has not responded to this motion. With two exceptions not relevant here, Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion." Pilger has consented to the granting of this motion with his silence and, as discussed below, I grant the motion in part on its merits.

---

[48] *Id.* at 351.

[49] *See, e.g.*, ECF No. 1-6 at 31–37 (executed waivers of service of summons).

[50] As defendants explain in their response, 30 days from July 30, 2020, falls on Saturday, August 29, 2020, so under Federal Civil Procedure Rule 6(a)(C), "the period continue[d] to run until the end of the next day that is not a Saturday, Sunday, or legal holiday[,]" which in this case was August 31, 2020.

[51] *See* ECF No. 1 (petition for removal filed on August 28, 2020).

[52] ECF No. 8.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[53] The purpose of 28 U.S.C. § 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expense.'"[54] Motions to transfer venue lie within the district court's discretion and require an "'individualized, case-by-case consideration of convenience and fairness.'"[55] "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'"[56]

"The calculus changes, however," in a case involving a valid forum-selection clause, "which 'represents the parties' agreement as to the most proper forum.'"[57] "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways."[58] "First, the plaintiff's choice of forum merits no weight."[59] Second, the district court "should not consider arguments about the parties' private interests."[60] The court must instead "deem the private-interest factors to weigh entirely in favor of the preselected forum."[61]

---

[53] 28 U.S.C. § 1404(a).

[54] *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.*, 364 U.S. 19, 26 (1960)).

[55] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Richoh Corp.*, 487 U.S. 22, 29 (1988)).

[56] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. W.D. Tex.*, 571 U.S. 49, 62–63 (2013) (quoting 28 U.S.C. § 1404(a)).

[57] *Id.* at 63 (quoting *Stewart Org.*, 487 U.S. at 31).

[58] *Id.*

[59] *Id.*

[60] *Id.* at 64.

[61] *Id.*

This means that district courts may consider only arguments about the public-interest factors.[62] "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[63] Third, when a party bound by a forum-selection clause flouts [his] contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations."[64]

A motion under § 1404(a) is the proper vehicle to enforce a forum-selection clause that points to a federal forum, while a motion under the doctrine of *forum non conveniens* is the proper way to enforce a clause that points to a nonfederal forum.[65] But the analysis is the same regardless of whether the clause points to a federal forum or a nonfederal one.[66]

### B. Analysis

The two contracts at issue in this action are a Settlement Agreement and a Separation and Release Agreement (Separation Agreement). Defendants ask me to take judicial notice of the parties' agreements, which I decline to do because defendants have not shown how the agreements or their contents meet Federal Rule of Evidence 201's standard for that relief.[67] But

---

[62] *Id.*

[63] *Id.*

[64] *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[65] *Id.* at 60.

[66] *Id.* (explaining that "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum") (citation omitted).

[67] Courts can take judicial notice of any adjudicative fact that "is not subject to reasonable dispute because it" is either "generally known within [the] court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(1)–(2).

I do consider the agreements under the doctrine of incorporation by reference because Pilger's claims are centered on their contents, defendants provide a copy of each agreement with their motion, and the parties do not dispute the agreements' authenticity.[68]

The Settlement Agreement provides that it must be "interpreted, enforced, and governed by and under the laws of the State of California without giving effect to is [sic] conflicts of law provisions."[69] "Venue for all matters arising from the [Settlement] Agreement will be the Superior Court of California, Los Angeles County."[70] I find that the language of this provision is mandatory in nature but narrow in scope.[71] Meaning, the narrow band of claims that fall within the clause's ambit must be litigated in the Superior Court of California, Los Angeles County.

The Separation Agreement provides that it "is entered into in Nevada, and the laws of the State of Nevada will apply to any dispute concerning it, excluding the conflict-of-laws principles thereof."[72] The Separation Agreement does not contain a venue clause. Because the only venue identified in these agreements is a state one—the Superior Court of California, Los Angeles County—I construe defendants' motion to dismiss or transfer venue under 28 U.S.C. § 1404(a) as a motion to dismiss under the doctrine of *forum non conveniens*.

---

[68] *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (collecting cases).

[69] ECF No. 10-1 at 6, ¶ 13.

[70] *Id.*

[71] *See Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463–64 (9th Cir. 1983) (adopting the Second Circuit's holding that clauses that "omit[ ] reference to disputes 'relating to' the agreements" are narrow; so a clause that pertains only to claims that "arise under" the agreements is narrow).

[72] ECF No. 10-2 at 6, ¶ 19.

### 1. *The two agreements do not constitute a single contract.*

Defendants argue that the venue clause in the Settlement Agreement also applies to the Separation Agreement because those agreements constitute a single contract and must be read together as they were contemporaneously signed by the same parties and relate to the same subject matter.[73] But defendants do not argue that these agreements constitute a single contract under Nevada or California law, let alone establish which state's law I must apply to resolve that question. Defendants merely cite my decision in *Morse v. Ten X Holdings, LLC* as supporting their argument.[74] But *Morse* involved Illinois law[75] and the facts in that case satisfied Illinois's law about when multiple agreements can constitute a single contract.[76] *Morse* does not advance defendants' position that the agreements in this case constitute a single contract under Nevada or California law.

To constitute a single agreement under Nevada law, the contracts must (1) be "contemporaneously executed" and (2) "concern the same subject matter" and (3) "one of the instruments [must] refer to the other."[77] California Civil Code § 1642 provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." "[W]hether two agreements constitute a single contract [under California law] depends on the circumstances and intent of the

---

[73] ECF No. 8 at 11.

[74] *Id.* (citing *Morse v. Ten X Holdings, LLC*, 2017 WL 4079264 (D. Nev. Sept. 13, 2017)).

[75] *Morse*, 2017 WL 4079264, at n.33 (citing *Kelsey v. Clausen*, 100 N.E. 984, 986 (Ill. 1913)).

[76] *Id.* at *3.

[77] *Whitemaine v. Aniskovich*, 183 P.3d 137, 141 (Nev. 2008) (citing *Collins v. Union Fed. Sav. and Loan*, 662 P.2d 610, 615 (Nev. 1983)).

12

parties . . . ."[78]  "[I]ntent is to be inferred, if possible, solely from the written provisions of the contract."[79]  I apply the law of both states to determine if there is a conflict.

The parties to both agreements are the same: Pilger, Coryell, and San Pasqual.[80]  The agreements were signed contemporaneously: Pilger and San Pasqual signed both agreements on June 14, 2018,[81] and Coryell signed them on June 20.[82]  And both agreements relate to the same subject matter: disentangling Pilger's interests from those of Coryell and the administrative trust.  But one agreement does not reference the other, which is necessary for them to be generally considered a single contract under Nevada law.[83]

Although California law does not require that one agreement references the other,[84] it does require that I consider the intent of the parties and draw that from the agreements themselves, if possible.[85]  There is no evidence on the face of these agreements that the parties intended them to be construed as a single contract.  Each agreement provides different consideration for Pilger to perform the same obligations—vacate the trust's real property in Nevada by a certain date and release any claims that he might have against the defendants.  Each agreement contains its own unique integration clause.[86]  Each agreement applies a different state's law.  And only the Settlement Agreement contains a forum-selection clause.  Based on

---

[78] *Subaru of Am., Inc. v. Putman Auto., Inc.*, 275 Cal. Rptr. 3d 120, 127 (Cal. Ct. App. 2021).
[79] *Id.* (quotation omitted).
[80] *Compare* ECF No. 10-1 at 2, *with* ECF No. 10-2 at 2.
[81] ECF Nos. 10-1 at 8, 10; 10-2 at 6, 8.
[82] ECF Nos. 10-1 at 9; 10-2 at 7.
[83] *Whitemaine*, 183 P.3d at 143.
[84] *Cadigan v. Am. Trust Co.*, 281 P.2d 332, 336 (Cal. Dist. Ct. App. 1955).
[85] *Subaru of Am., Inc.*, 275 Cal. Rptr. 3d at 127.
[86] *Compare* ECF No. 10-1 at 6, ¶ 10 (Settlement Agreement), *with* ECF No. 10-2 at 5, ¶ 17 (Separation Agreement).

this record, I conclude that the two agreements cannot be considered one instrument under Nevada or California law.[87] But this does not end the inquiry because I must determine if Pilger's claims fall within the scope of the Settlement Agreement's forum-selection clause.

### 2. *Scope of the forum-selection clause*

The success of a "forum non conveniens argument hinges on whether the . . . forum[-]selection clause applies to" the other party's claims.[88] "Whether a party's claims sufficiently relate to a contract to fall within the scope of its forum[-]selection clause is a question of law . . . ."[89] The Ninth Circuit has recognized that the scope of a forum-selection clause is not necessarily limited to contract claims.[90] District courts must apply federal law when they interpret forum-selection clauses.[91] A narrow forum-selection clause, like the one in the Settlement Agreement, covers only those "claims that cannot 'be adjudicated without analyzing whether the parties were in compliance' with the agreement containing the clause."[92]

Pilger asserts six claims for relief against the defendants. Unless otherwise stated, Nevada law recognizes each of them. For the purposes of this motion, I assume without deciding that Pilger's claims are sufficiently pled.[93] Pilger's first claim for relief is split into two subparts and collectively entitled "intentional and/or negligent interference with prospective economic

---

[87] Because I find the agreements cannot be considered a single contract under Nevada or California law, I need not and do not analyze what state's law I must apply to resolve that question.

[88] *In re Orange, S.A.*, 818 F.3d 956, 961–62 (9th Cir. 2016).

[89] *Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016) (unpublished).

[90] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

[91] *Manetti-Farrow, Inc.*, 858 F.2d at 513.

[92] *Rey*, 666 F. App'x at 676 (quoting *Manetti-Farrow*, 858 F.2d at 514).

[93] No part of this order should be construed as concluding that Pilger has stated a colorable claim for relief against any defendant.

14

advantage."[94]  The first subpart asserts a claim for intentional interference with contractual relations, alleging that defendants interfered with the written contract that Pilger had with Gwynneth for free housing for his lifetime.[95]  The second subpart asserts a claim for wrongful interference with prospective economic advantage, alleging that defendants interfered with the prospective contractual relationship that Pilger had with the Weisses for lifetime employment and free housing for life.[96]

Pilger's second claim alleges that the defendants extorted him by telling him to sign the agreements or he'd get nothing from Coryell or the trust.[97]  Nevada and federal law recognize extortion as a crime, but neither creates a private right of action for extortion.[98]  Defendants contend that California seems to recognize a civil claim for extortion,[99] but whether California actually recognizes such a claim is not firmly established.[100]  Pilger's third claim alleges that defendants unjustly enriched themselves at his expense.[101]  His fourth claim alleges that

---

[94] ECF No. 1-1 at 7–10, ¶¶ 26–28.

[95] *Id.* at ¶ 27.

[96] *Id.* at ¶ 28.

[97] *Id.* at ¶¶ 29–30.

[98] *See* Nev. Rev. Stat. § 205.320; 18 U.S.C. §§ 1951(b)(2), 876(d).

[99] ECF No. 8 at 14; *see Flatley v. Mauro*, 139 P.3d 2, 19–24 (Cal. 2006) (affirming trial court's decision denying motion to strike complaint, which included a claim for civil extortion, under California's anti-strategic-lawsuit-against-public-participation statute because the speech at issue constituted criminal extortion as a matter of law).

[100] *See Tran v. Eat Club, Inc.*, 2020 WL 4812634, at *13 (Cal. Ct. App. Aug. 18, 2020) ("California has not recognized a tort of civil extortion corresponding to criminal extortion." The plaintiff here "is conflating *Flatley*'s principle that the anti-SLAPP statute does not apply to speech and petitioning activity that is illegal as a matter of law—which applies to threatening communications that constitute criminal extortion as a matter of law—with the entirely separate question of whether California recognizes a civil extortion cause of action for damages.") (unpublished).

[101] ECF No. 1-1 at ¶¶ 31–32.

15

defendants misrepresented material facts about his severance pay under the agreements to the Nevada Department of Rehabilitation, Training, and Employment.[102] And Pilger's fifth claim alleges that Coryell breached written and oral agreements that she had with him for lifetime free housing, and it invokes the doctrine of promissory estoppel to substitute the lack of consideration that Pilger paid for that benefit.[103]

Regardless of their titles, Pilger's claims share a common theme: that he is entitled to compensatory damages because the Settlement Agreement and Separation Agreement that he signed do not contain terms for what he contends he is owed—lifetime employment with the Weiss family trust and free housing for life. Defendants do not dispute Pilger's account of what the agreements lack. But, they argue, Pilger agreed to release these claims and any others that he might have against any of them when he signed the agreements and accepted the consideration offered under them.[104] Defendants point out that the Settlement Agreement contains a clause providing that Pilger "releases and discharges" the trustees of the Gwynneth Weiss Administrative Trust and its employees and attorneys, among others, "from all rights, claims, controversies, demand, obligations, and causes of action of any kind or nature whatsoever, now known or unknown, suspected or claimed arising out of their actions as trustees of the Administrative Trust, Survivor's Trust and the Revocable Trust."[105]

---

[102] ECF No. 1-1 at ¶¶ 33–35.

[103] *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989) (explaining that the doctrine of promissory estoppel is a "substitute for consideration" and "embraces the concept of detrimental reliance") (collecting authorities).

[104] ECF No. 8 at 18–19 (citing 10-2 at 3–4, ¶ 7 (Separation Agreement); 10-1 at 4, ¶¶ 6, 7 (Settlement Agreement)).

[105] ECF No. 10-1 at 4, ¶ 7.

Pilger does not dispute the Settlement Agreement's existence, its contents, or the authenticity of the copy that the defendants provided to the court. The court cannot adjudicate Pilger's claims without examining the Settlement Agreement to determine if they fall within the scope of that agreement's release provision and, thus, if the parties are in compliance with its terms. Pilger's claims therefore fall within the forum-selection clause's ambit. This means that I must dismiss Pilger's claims unless he demonstrates that public-interest considerations make these circumstances extraordinary.[106] This is true even though Pilger asserts a claim for civil extortion, i.e., that he signed the agreements under duress.[107] The Ninth Circuit explained in *Richards v. Lloyd's of London* that "simply alleging that one was duped into signing the contract is not enough."[108] "For a party to escape a forum[-]selection clause on the grounds of fraud, [he] must show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'"[109] Because Pilger's extortion claim goes to the agreements as a whole, not the inclusion of any specific provision like the forum-selection clause, it does not allow him to escape the clause's effect.

The United States Supreme Court has instructed that "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain."[110] Defendants point out

---

[106] *See Atlantic Marine Const. Co.*, 571 U.S. at 52 (explaining that when a defendant moves to dismiss or transfer venue based on a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer" or dismissal).

[107] There are other reasons why Pilger's extortion claim does not move the needle on whether his claims in this action "arise from" the Settlement Agreement, including the fact that such a claim does not seem to exist under Nevada, federal, or California law.

[108] *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)).

[109] *Id.* (quoting *Scherk*, 417 U.S. at 519 n.14).

[110] *Id.* at 66.

there is no evidence of fraud in the context of the Settlement Agreement's negotiation and enforcing the forum-selection clause would not violate any strong public policy or deprive Pilger of his day in court.[111] Pilger did not respond to any of these points. Because Pilger has not demonstrated that this is an unusual case where the court should disregard the parties' agreement to litigate in a particular forum, I dismiss his claims without prejudice to his ability to assert them in a new action in the Superior Court of California, Los Angeles County. And I deny as moot the parties' remaining motions, objections, and requests for relief.

## Conclusion

IT IS THEREFORE ORDERED that:

- Pilger's motion to remand **[ECF No. 12] is DENIED**.

- Defendants' motion to dismiss or transfer venue **[ECF No. 8] is GRANTED IN PART**: Pilger's claims are DISMISSED WITHOUT PREJUDICE to his ability to assert them in a new action in the Superior Court of California, Los Angeles County.

- Defendants' motion for leave to file a sur-reply **[ECF No. 31] is GRANTED IN PART**: the court considered the points that the parties raised in their sur-reply briefs.

- The parties' remaining motions, objections, and requests for relief **[ECF Nos. 5, 6, 32] are DENIED AS MOOT.**

Finally, the Clerk of Court is directed to CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
May 28, 2021

---

[111] ECF No. 8 at 12–18.